UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA                                CRIMINAL ACTION

VERSUS                                                          No. 10-329

TRAVIS HUDSON                                                   SECTION I

ORDER & REASONS

Before the Court is *pro se* defendant Travis Hudson's ("Hudson") motion[1] for compassionate release under the First Step Act, 18 U.S.C. § 3582(c)(1)(A). The government opposes the motion.[2] Considering the factors in 18 U.S.C. § 3553(a), the Court concludes that compassionate release is not warranted.

I.

In 2013, Hudson pled guilty to counts one and twenty-one of a twenty-two-count third-superseding indictment in this multi-defendant drug conspiracy.[3] Count one charged him with conspiracy to violate the Racketeer Influence and Corrupt Organizations Act ("RICO"); count twenty-one charged him with distribution of cocaine base.[4] This Court sentenced Hudson to a term of imprisonment of 240 months for each count, to be served concurrently, and to five- and three-year terms of supervised release for each count, also to be served concurrently.[5] Hudson is

---

[1] R. Doc. Nos. 765, 773. The Court treats Hudson's two motions as one, since they seek the same relief and make the same arguments.
[2] R. Doc. No. 769.
[3] R. Doc. Nos. 69, 522.
[4] R. Doc. No. 69, at 1–7, 31–32.
[5] R. Doc. No. 522, at 2–3.

1

currently incarcerated at FCI Butner (Medium II); his projected release date is June 3, 2027.[6]

Hudson asks the Court to grant him compassionate release due to the COVID-19 pandemic.[7] He suffers from "chronic kidney disease [s]tage 4," which places him "at risk for severe illness, complication, or death" if he were to contract COVID-19.[8] He further states that he is "already suffering from a cisted complication on my private area and my right jaw."[9] He draws the Court's attention to what he characterizes as a similar situation in *United States v. Young*, No. 19-5055, 2020 WL 2614745 (W.D. Wash. May 22, 2020).[10] Hudson submitted a request for compassionate release to his warden more than thirty days ago,[11] and the government concedes that he has thereby exhausted administrative remedies.[12]

The government opposes Hudson's motion on the merits. It concedes that Hudson's medical condition qualifies as an extraordinary and compelling reason during the COVID-19 pandemic,[13] but it argues that "other factors weigh strongly against his release."[14] That is, Hudson cannot "demonstrate that he 'is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C.

---

[6] *Inmate Locator*, Federal Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited Feb. 25, 2021).
[7] R. Doc. No. 765, at 1.
[8] *Id.*
[9] *Id.*
[10] *Id.*
[11] R. Doc. No. 765-1, at 1.
[12] R. Doc. No. 769, at 11.
[13] *Id.* at 16.
[14] *Id.*

2

§ 3142(g).'"[15]  The government points to Hudson's lengthy (and sometimes violent) criminal history, arguing it "evinces a defendant with a strong predilection for dangerous behavior that precludes a granting of compassionate release."[16]  Moreover, it argues that release would "undermine the need for the sentence imposed, including the need to reflect the seriousness of the offenses, to promote respect of the law and to provide just punishment."[17]

## II.

Generally, "[t]he court may not modify a term of imprisonment once it has been imposed."  18 U.S.C. § 3582(c).  That general rule has some exceptions, which, under the First Step Act, may now be presented to the court upon a defendant's motion.[18]  For such a motion to be properly before the court, the defendant must either exhaust all administrative remedies, or thirty days must elapse "from the receipt of [a compassionate release request] by the warden of the defendant's facility, whichever is earlier."  *Id.* § 3582(c)(1)(A).

The court "may" grant such a motion if, "after considering the factors set forth in [18 U.S.C. § 3553(a)] to the extent they are applicable," it finds that "extraordinary and compelling reasons warrant such a reduction."  *Id.*  The court must also conclude,

---

[15] *Id.* at 17 (quoting *United States v. Reed*, No. 15-100, 2020 WL 2850145, at *4 (E.D. La. June 2, 2020) (Fallon, J.)).
[16] *Id.* at 18.
[17] *Id.* at 19–20.
[18] The First Step Act provided defendants a mechanism to unilaterally move for a sentence reduction; previously, the "Director of the Bureau of Prisons" needed to file the motion.  *See* First Step Act of 2018, Pub. L. No. 115-391, § 603(b), 132 Stat. 5193, 5239.

3

however, that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.*

The most relevant policy statement is found in § 1B1.13 of the U.S. Sentencing Guidelines Manual. The Application Notes to that policy statement, in turn, provide four categories of extraordinary and compelling reasons: "(1) medical conditions, (2) age, (3) family circumstances, and (4) 'other reasons.'" *United States v. Thompson*, 984 F.3d 431, 433 (5th Cir. 2021) (quoting U.S.S.G. § 1B1.13, Policy Statement, cmt. n.1(A)–(D)) (alterations omitted).

As noted above, the First Step Act provided a new avenue to request compassionate release. Previously, only the Director of the BOP—not defendants on their own—could move for compassionate release. The First Step Act changed that. However, the Sentencing Commission's policy statements have lagged behind. Because these policy statements have not been amended since the enactment of the First Step Act, portions of them now appear to squarely contradict 18 U.S.C. § 3582(c)(1)(A). For example, the policy statement referenced above begins with, "[u]pon a motion by the Director of the Bureau of Prisons"—which implies that the entire statement applies only to such motions (and not those filed by defendants). U.S.S.G. § 1B1.13, Policy Statement; *see also id.* cmt. n.4 ("A reduction under this policy statement may be granted only upon motion by the Director of the Bureau of Prisons . . . ."); *see also United States v. Perdigao,* No. 07-103, 2020 WL 1672322, at *2 (E.D. La. Apr. 2, 2020) (Fallon, J.) (noting the discrepancy). This raises a significant question: whether courts, instead of the BOP exclusively, have discretion

4

to determine which reasons are sufficiently extraordinary and compelling to fall under the policy statement's catch-all, 'other reasons' category. *See United States v. Ruffin*, 978 F.3d 1000, 1006–08 (6th Cir. 2020) (collecting cases and describing the debate). Courts are split on the matter. *See id.*

For its part, the Fifth Circuit has recognized that the policy statement, notwithstanding this discrepancy, should still at least "inform[] [its] analysis." *Thompson*, 984 F.3d at 433. And as to whether courts (rather than exclusively the BOP) have discretion to find 'other reasons' that are extraordinary and compelling—even if those reasons are not expressly addressed by the policy statement's guidance on (1) medical conditions, (2) age, and (3) family circumstances—the Fifth Circuit has "opt[ed] not to weigh in." *Id.* at 433 n.4.

This Court need not weigh in either, because the government concedes that extraordinary and compelling reasons exist in this case. Therefore, the sole question for this Court is whether Hudson has carried his burden to show that the applicable § 3553(a) factors justify his release. As explained below, these factors compel the denial of Hudson's motion.

### A.  Exhaustion of Administrative Remedies

Section 3582, as mentioned above, allows a court to consider a defendant's compassionate-release motion only after the defendant exhausts administrative remedies, or 30 days elapse after the defendant submits a compassionate-release request to the warden. 18 U.S.C. § 3582(c)(1)(A); *see United States v. Franco*, 973 F.3d 465, 467 (5th Cir. 2020) (holding that the statutory requirement is "*not*

jurisdictional but . . . *is* mandatory") (emphasis in original). As stated previously, the government concedes that Hudson satisfied this requirement.[19] Accordingly, the Court may consider Hudson's motion. *See* 18 U.S.C. § 3582(c)(1)(A).

### B. Extraordinary and Compelling Reasons

A prerequisite to granting compassionate release is that the defendant shows an extraordinary and compelling reason justifying release. Ordinarily, the Sentencing Commission's policy statement would "inform" this Court's analysis of whether Hudson has presented an extraordinary and compelling reason. *Thompson*, 984 F.3d at 433 (citing U.S.S.G. § 1B1.13, Policy Statement, cmt. n.1); *United States v. Helmstetter*, No. 92-469, 2021 WL 310355, at *5 (E.D. La. Jan. 29, 2021) (Africk, J.); *Perdigao*, 2020 WL 1672322 at *2.

Here, however, the government has conceded[20] that Hudson's medical condition, chronic kidney disease—which places him at "increased risk of severe illness" were he to contract COVID-19—amounts to an extraordinary and compelling reason during this pandemic.[21] Because the government has conceded this point, the Court will not discuss it further.

---

[19] R. Doc. No. 769, at 12 ("Hudson has exhausted his administrative requirements.").
[20] *Id.* at 17 ("The government agrees that the chronic condition presents an 'extraordinary and compelling' reason supporting his compassionate release request . . . .").
[21] *Id.* at 14–15 (conceding that inmates with preexisting conditions that, according to the CDC, definitively place them at "increased risk of severe illness" from COVID-19 have a "medical condition" that constitutes an extraordinary and compelling reason for compassionate release during the pandemic, and stating that "Chronic kidney disease" is one of those conditions) (citations omitted); *see also COVID-19: People with Certain Medical Conditions*, Centers for Disease Control and Prevention (updated

## C. Section 3553(a) Factors

"[A]fter considering the factors set forth in [18 U.S.C. § 3553(a)] to the extent they are applicable," the Court concludes that compassionate release is not warranted. *See* 18 U.S.C. § 3582(c)(1)(A). The most applicable factors are: (1) "the nature and circumstances of the offense and the history and characteristics of the defendant," and (2) the "need for the sentence imposed– (A) to reflect the seriousness of the offense, [or] to promote respect for the law . . . ; (B) to afford adequate deterrence to criminal conduct; [and] (C) to protect the public from further crimes of the defendant." 18 U.S.C. §§ 3553(a)(1), (a)(2)(A)–(C). After considering these factors, the Court concludes that a sentence reduction is inappropriate.

Hudson admitted to being a member of the "Harvey Hustlers/Murder Squad"— a violent Jefferson Parish street gang that distributed drugs between 2004 and 2012.[22] The gang used "intimidation, violence, threats of violence, assault, and murder" to "preserv[e] and protect[]" its "power, territory, and profits."[23] Through violence and threats of violence, the gang kept "victims, potential victims and witnesses in fear of the enterprise and in fear of its members."[24] Hudson was primarily a drug-distributor for the gang; he admitted to personally distributing

---

Feb. 22, 2021), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (listing such medical conditions).
[22] R. Doc. No. 335, at 2 (factual basis).
[23] *Id.* at 2.
[24] *Id.*

7

between 280–840 grams of crack cocaine.[25] But he also *acquired* drugs for the gang, and he sold drugs "while in possession of firearms."[26]

Aside from participating in the gang, Hudson's criminal convictions span two decades of his life: two disturbing-the-peace convictions (ages 14 and 20); second-degree battery for cracking a woman's jaw (age 20); violation of a protective order (age 20); two drug-possession convictions (ages 23 and 27); and two resisting-an-officer convictions, including one for attempting to strike the officer (ages 25 and 27).[27] Further, Hudson was charged in 2012 with second-degree battery for punching another gang member who, Hudson thought, was cooperating with law enforcement.[28] At the time, both Hudson (by then, age 30) and the victim were in pretrial custody awaiting disposition of the instant offense; the battery charge was later dismissed, but Hudson received a two-level obstruction-of-justice enhancement for the conduct.[29] Moreover, Hudson committed the instant offense while he was on parole from state prison.[30] And, according to the BOP, Hudson battered another inmate in 2016.[31] In sum, Hudson's history shows a propensity for violence.

---

[25] *Id.* at 8.
[26] R. Doc. No. 469, at 51 (final presentence investigation report, with resolved objections incorporated); *see also* R. Doc. No. 335, at 5 ("T. Hudson . . . obtained quantities of cocaine[.]"). Hudson also "sold" to his brother Marvin, a fellow gang member, a "firearm," and was ordered by Marvin to "transfer" another firearm, but Hudson never did. R. Doc. No. 335, at 6.
[27] R. Doc. No. 676, at 5–7 (sentencing transcript).
[28] R. Doc. No. 469, at 53.
[29] *Id.*
[30] *Id.* at 59.
[31] R. Doc. No. 769-6, at 1 (BOP disciplinary record).

8

These examples also demonstrate Hudson's consistent disregard for the law.[32] His record therefore reflects a stubborn and continuous pattern of violence and lawlessness. Now at only age 37, Hudson may very well return to a life of crime if released.[33] Indeed, when entrusted with parole in the past, Hudson did just that—committing the instant offenses.[34]

Hudson's sentence is therefore justified chiefly as a means of protecting the public from future crimes that he may commit if released. 18 U.S.C. § 3553(a)(1), (2)(C). His serious sentence also reflects the seriousness of the offense—his armed participation in a massive and violent drug conspiracy. *See id.* § 3553(a)(2)(A). His sentence may also be justified as a means of promoting respect for the law and to deter future similar conduct. *See id.* § 3553(a)(2)(B)–(C).

Further, to the extent the Court is bound by 18 U.S.C. § 3582(c)(1)(A) to consider—because it may be "applicable"—the now-stale policy statement described in detail above,[35] that only reinforces its conclusion. That policy statement *requires* the Court to find that Hudson "is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)" before granting compassionate

---

[32] This disregard has persisted; in 2018, for example, Hudson admitted to "possessing homemade intoxicants" in his cell. *Id.*

[33] R. Doc. No. 676, at 6 (summarizing, at Hudson's sentencing, his criminal history and noting that his "adjustment to supervision was poor").

[34] R. Doc. No. 469, at 59.

[35] The Court is hesitant to conclude that the policy statement is "applicable"—as its text clearly implies it is applicable only to motions filed by the BOP. *See supra* introductory text to part II. That said, the Fifth Circuit has used the statement to at least "inform[]" its analysis, *Thompson*, 984 F.3d at 433, and this Court follows that approach.

release. U.S.S.G. § 1B1.13(2), Policy Statement. The Court has already found the opposite; therefore, to grant compassionate release would not be "consistent with" that policy statement, assuming it is applicable. 18 U.S.C. § 3582(c)(1)(A).

Accordingly, regardless of whether the Court uses as its yardstick the § 3553(a) factors or the policy statement alone, both require denial of Hudson's motion—despite his advanced kidney disease.

## III.

Accordingly,

**IT IS ORDERED** that Hudson's motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A) is **DENIED**.

New Orleans, Louisiana, February 26, 2021.

_____
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**